UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

**KENTRELL ELVERT DARDEN-ASKEW,**

      **Plaintiff,**

v.                        **Civil Action No.**

**EXPERIAN INFORMATION SOLUTIONS, INC.,**
**475 Anton Blvd, Costa Mesa, CA 92626**
**SERVE: Troutman Sanders LLP, registered agent**
      **1001 Haxall Point**
      **Richmond, VA 23219**

      **Defendant.**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Kentrell Elvert Darden-Askew ("Plaintiff"), brings this action against Defendant Experian Information Solutions, Inc. ("Defendant" or "Experian") under the Fair Consumer reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq. Based upon the personal knowledge of Plaintiff, the investigation of counsel, and upon information and belief, Plaintiff alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff alleges that Defendant violated the FCRA by failing to maintain reasonable procedures to ensure Plaintiff's consumer information was reported with maximal accuracy. 15 U.S.C. § 1681e(b).

2. Plaintiff also alleges that Defendant violated the FCRA by selling Plaintiff's consumer report(s) to third parties without a permissible purpose. 15 U.S.C. § 1681b, *et seq.*

## PARTIES

3. Plaintiff resides in the City of Norfolk, Virginia. Plaintiff is a "consumer" and "person" as defined 15 U.S.C. § 1681a(b)-(c).

4. Defendant regularly compiles and distributes consumer credit information in exchange for monetary compensation. Therefore, the Defendant is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Defendant can be served at its registered agent in Richmond, Virginia, Troutman Sanders LLP, located at 1001 Haxall Point, Richmond VA 23219.

5. At all times relevant to this Complaint, Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, 15 U.S.C. § 1681p.

7. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this division of the Eastern District of Virginia.

## FACTUAL ALLEGATIONS

8. In or around January 2021, Plaintiff purchased a vehicle from non-party Toyota.

9. At that time, a Toyota representative told Plaintiff that his Experian credit score was in the 500s.

10. This news shocked and embarrassed Plaintiff, as he believed that his credit score was closer to 750 (as reported by non-parties Trans Union and Equifax).

11. Upon information and belief, Experian provided Toyota with a consumer report that included a number of collections accounts that actually belong to Plaintiff's twin brother, Montrell George Darden-Askew.

12. Upon information and belief, the consumer report that Experian sold to Toyota also

included Plaintiff's brother's name and social security number.

13. Luckily, the Toyota representative was able to review one or more of Plaintiff's other consumer reports to verify that the Experian consumer report contained unreliable information.

14. Accordingly, Plaintiff was able to purchase the vehicle. He left Toyota assuming that the Experian report was an isolated error.

15. Unfortunately, Plaintiff soon learned that Experian's inaccurate reporting was not an isolated incident.

16. In or about August 20, 2021, Plaintiff applied for a mortgage through Rocket Mortgage.

17. The next day, the mortgage agent informed Plaintiff that his application was being put on hold.

18. According to Rocket Mortgage, Experian was reporting thirty-one collections accounts on Plaintiff's consumer report.

19. Again, Plaintiff was embarrassed, shocked and humiliated to be associated with a long string of inaccurate collections. As far as Plaintiff knew, he did not have a single account in collections, let alone thirty-one.

20. Upon information and belief, the Rocket Mortgage representative initially reviewed Plaintiff's Experian consumer report.

21. Upon information and belief, the Experian report Rocket Mortgage reviewed included Plaintiff's twin brother's social security number, name, and collections accounts.

22. The Rocket Mortgage representative reviewed Plaintiff's other consumer reports to try to understand the discrepancies between the information provided by Experian and the

information provided by the other consumer reporting agencies.

23. All the while, Plaintiff was left with his mortgage application on hold, delayed in obtaining time-sensitive financing for his home.

24. Plaintiff experienced stress and defeat because he was put in danger of losing the opportunity to purchase a home because Experian had mixed him with his brother's credit information.

25. While he waited to hear back from Rocket Mortgage, Plaintiff went online to try to pull his consumer reports and uncover the mistakes preventing his approval.

26. On or about August 25, 2021, Plaintiff successfully accessed his Trans Union and Equifax consumer reports after inputting his personal information.

27. Neither Equifax nor Trans Union were reporting Plaintiff's brother's personal information or accounts.

28. Plaintiff was not able to retrieve his Experian consumer report from Defendant's website using his personal information.

29. Upon information and belief, Plaintiff was not able to access his Experian consumer report because Defendant erroneously associated Plaintiff's consumer file with his brother's personal information.

30. On or about September 4, 2021, nearly two weeks after first applying, Rocket Mortgage finally approved Plaintiff's application.

31. However, Plaintiff was concerned that Experian's inaccurate reporting would cause more issues for him in the future.

32. Accordingly, Plaintiff sent a letter (via certified mail) to Experian to request his consumer file on or about September 13, 2021.

33. In his letter, Plaintiff provided his full name, address, date of birth, and social security number.

34. Defendant received Plaintiff's request on September 16, 2021.

35. On or about September 21, 2021, Plaintiff received the purported Experian consumer file.

36. At that time, Plaintiff saw that Experian was reporting **thirty-one** collections accounts in his consumer file, including:

    i. AFNI, INC (No. 1080196268)

    ii. CAPIO PARTNERS (No. 24533597)

    iii. CAPIO PARTNERS (No. 24535447)

    iv. CAPIO PARTNERS (No. 24542151)

    v. CONTRACT CALLERS (No. 34282536)

    vi. CREDIT COLLECTION SVCS I (No. 83880540)

    vii. RB CORP VA/CREDIT CONTROL CORP. OF (No. 2171087656)

    viii. RB CORP VA/CREDIT CONTROL CORP. OF (No. 2171708494)

    ix. RB CORP VA/CREDIT CONTROL CORP. OF (No. 2171708548)

    x. RB CORP VA/CREDIT CONTROL CORP. OF (No. 2172054447)

    xi. RB CORP VA/CREDIT CONTROL CORP. OF (No. 2173504001)

    xii. RB CORP VA/CREDIT CONTROL CORP. OF (No. 2180232343)

    xiii. RB CORP VA/CREDIT CONTROL CORP. OF (No. 2180267472)

    xiv. RB CORP VA/CREDIT CONTROL CORP. OF (No. 2180455255)

    xv. RB CORP VA/CREDIT CONTROL CORP. OF (No. 2180765095)

    xvi. RB CORP VA/CREDIT CONTROL CORP. OF (No. 2182065020)

xvii. RB CORP VA/CREDIT CONTROL CORP. OF (No. 2182632242)

xviii. RB CORP VA/CREDIT CONTROL CORP. OF (No. 2182898523)

xix. RB CORP VA/CREDIT CONTROL CORP. OF (No. 2183176537)

xx. RB CORP VA/CREDIT CONTROL CORP. OF (No. 2183176583)

xxi. RB CORP VA/CREDIT CONTROL CORP. OF (No. 2183485567)

xxii. RB CORP VA/CREDIT CONTROL CORP. OF (No. 2183485646)

xxiii. RB CORP VA/CREDIT CONTROL CORP. OF (No. 2190477973)

xxiv. RB CORP VA/CREDIT CONTROL CORP. OF (No. 2190781468)

xxv. RB CORP VA/CREDIT CONTROL CORP. OF (No. 2190781689)

xxvi. RB CORP VA/CREDIT CONTROL CORP. OF (No. 2190782278)

xxvii. RB CORP VA/CREDIT CONTROL CORP. OF (No. 2191066569)

xxviii. RB CORP VA/CREDIT CONTROL CORP. OF (No. 2192595336)

xxix. RB CORP VA/CREDIT CONTROL CORP. OF (No. 2192605612)

xxx. RB CORP VA/CREDIT CONTROL CORP. OF (No. 2200214338)

xxxi. LAW OFFICES MBA (No. 22728547)

xxxii. LAW OFFICES MBA (No. 22728828)

xxxiii. VERIZON WIRELESS (No. 428683660)

37. Experian was also reporting two additional accounts, Navy Federal CR Union (No. 406095615118) and US Dept of ED/GLESI (No. 294358311679), that do not belong to Plaintiff.

38. Additionally, Plaintiff also noticed that his Experian consumer file included **thirteen** hard inquiries that Plaintiff did not recognize.

39. Experian listed the following creditors to whom it sold a copy of the Plaintiff's consumer report:

   i.  Synchrony Bank on June 25, 2020

   ii.  CL/SAFERENT Solutions on August 19, 2020

   iii.  Citibank NA., Best Buy on November 9, 2020

   iv.  Nowcom/Westlake Financial on May 7, 2020

   v.  Exeter Finance LLC/WCG on May 7, 2020

   vi.  Capital One Auto Finance on May 7, 2020

   vii.  Ally Financial on May 7, 2020

   viii.  Santander Consumer USA on May 8, 2020

   ix.  Exeter Finance LLC/WCG on May 8, 2020

   x.  Capital One Auto Finance on May 8, 2020

   xi.  Ally Financial on May 8, 2020

   xii.  Factual Data on August 17, 2021

   xiii.  JPMCB Card on September 4, 2021

  40.  Experian was also reporting Plaintiff's brother's name in the "Personal Information" section of his consumer file.

  41.  Additionally, Experian was reporting Plaintiff's brother's social security number in a field titled "Social Security Number Variations."

  42.  Plaintiff has only one Social Security Number. Upon information and belief, it is a red flag for potential fraud when a creditor obtains information that a consumer is associated with more than one Social Security Number.

  43.  None of the collection accounts that Experian included in Plaintiff's consumer report belong to him.

  44.  Upon information and belief, the erroneous collections accounts on Plaintiff's

Experian consumer report belong to Plaintiff's brother.

45. Upon information and belief, each of the unauthorized hard inquiries listed on Plaintiff's Experian consumer report are associated with his brother's applications for credit.

46. On or about October 20, 2021, Plaintiff spoke with a representative from Neighborhood Assistance Corporation of America (NACA) about a more affordable mortgage option.

47. During the initial consultation, the NACA representative indicated that Plaintiff would "easily" be approved for a mortgage because his application and financial reports were detailed and meticulous.

48. During the consultation, Plaintiff told the representative that he had no collections accounts, credit card debt, student loans, or late payments on his consumer report.

49. Naturally, the representative was suspicious and disbelieving about the Plaintiff's credit worthiness when reviewing the Plaintiff's Experian report, which – as detailed above – includes Plaintiff's brother's collections accounts, student loans, and credit cards.

50. Consequently, NACA was not able to "easily approve" Plaintiff's mortgage application.

51. Instead, the Plaintiff was required by NACA to essentially prove that that the accounts do not belong to him when Experian had unilaterally mixed his consumer information with a completely different person.

52. In addition, even though the Plaintiff had provided NACA with his government-issued identification and other proof of identity, because of Experian's false reporting, NACA forced the Plaintiff to provide additional verification of his identity.

53. As a direct consequence of Experian's inaccurate reporting, Plaintiff has suffered

injuries resulting in actual damages including delay and denial of credit, physical sickness due to emotional distress, embarrassment, and humiliation.

54. Plaintiff's embarrassment and humiliation come not only from the "negative" items incorrectly reported in his consumer file, but also from repeated interactions in which he seemed like a dishonest person.

55. Additionally, Plaintiff has suffered injuries resulting in additional actual in the form of stress, mental and emotional anguish, sleepless nights, and wasted time.

56. Upon information and belief, the three major consumer reporting agencies (Experian, Trans Union, and Equifax) share consumer information with each other. Experian should have known that it had mixed the Plaintiff's file with someone else when Trans Union and Equifax did not report the erroneous collections information about the Plaintiff.

57. Experian has an obligation to investigate the accuracy of each and every collection account before it is included in a consumer report.

58. At the time it compiled and sold each consumer report about the Plaintiff to each potential creditor, Experian already knew that its loose matching algorithms had previously frequently mixed consumer information with that of other consumers.

59. Experian's collection and reporting of information in Plaintiff's consumer report was exactly as Experian intended it to be.

60. Experian's reporting about Plaintiff was willful because it was carried out in reckless disregard for his rights as required by the Fair Consumer reporting Act.

61. With respect to the social security reporting, upon information and belief, Experian had no information upon which to report that the Plaintiff had used more than one Social Security Number and it had never received more than one Social Security Number belonging to the Plaintiff.

62. Upon information and belief, Experian on its own volition decided to include an additional Social Security Number ascribed to the Plaintiff, thus raising the possibility of fraud to NACA and other creditors.

63. Experian has intentionally established procedures for collection and reporting of social security number information in a way to make more money for itself, to create greater economic value for its paying clients that purchase consumer reports, and to shift the cost of finding out about inaccuracies, disputing inaccuracies, and correcting the consumer reports off onto unwilling consumers.

64. Experian has been on notice about the specific and systemic inaccuracies and limitations of its gathering, compiling, and reporting of social security and other third-party information since at least 2009, *Soutter v. Experian Information Solutions*.

65. Experian has been on substantial notice for decades that its business practices and procedures, including loose matching algorithms, give rise to mixing the files of consumers.

66. The Plaintiff has been a victim of a "mixed file." Experian has mixed information in his file with that of a completely different person.

67. In addition to being a "mixed file," the Plaintiff has also been the victim of Experian blindly reporting untrue information indicating a high risk of fraud.

68. As early as 1991, the Federal Trade Commission ("FTC") brought an enforcement action against Experian [formerly TRW, Inc.] in the United States District Court for the Northern District of Texas. *FTC v. TRW, Inc.*, 784 F. Supp. 361 (N.D. Texas 1991). In settling the enforcement action brought by the AGs, Experian agreed to maintain reasonable procedures to prevent the occurrence or reoccurrence of mixed files. Another enforcement action was brought against Experian by nineteen state attorneys general that resulted in a similar consent order as

described in the previous paragraphs, including the procedures related to the prevention of mixed files and procedures to reinvestigate disputes resulting from mixed files. *See TRW, Inc. v. Morales*, Civil Action No. 3-91-1340-H (N.D. Tex. 1991).

69. Similar enforcement actions were brought in 1992 and 2016, which resulted in consent orders where all three CRAs agreed to maintain reasonable procedures to prevent the occurrence or reoccurrence of mixed files, among other things.

70. Despite the consent orders with the FTC and the Attorneys General, the Experian's computer system causes these mixes because it does not require or use full identifying information for a potential credit grantor's inquiry even when unique identifiers such as a full Social Security Number are present. It does this in order to sell more consumer reports.

71. Experian has knowledge that its computer system causes one individual's consumer report to be confused with another individual's consumer report causing a "mixed file."

72. Moreover, Experian has actual knowledge that the three major credit bureaus have been sued repeatedly for failing to prevent mixed consumer files, including an $18.6 million dollar verdict against Equifax after it placed the information of another consumer into a plaintiff's record with the same name and failed to correct its errors. *Miller v. Equifax Information Services*, LLC, 3:11-cv-1231 (D. Or. 2011); *see also Calderon v. Experian Info. Solutions, Inc.*, 2012 U.S. Dist. LEXIS 89375, *10 (D. Idaho 2012); *Howley v. Experian Information Solutions, Inc*., Civil Action No. 09-241 (D.N.J. filed January 16, 2009); *Ainsworth v. Experian Info. Solutions, Inc.*, 2011 U.S. Dist. LEXIS 63174 (C.D. Cal. 2011); *Novak v. Experian Info. Solutions, Inc.*, 782 F. Supp. 2d 617 (N.D. Ill. 2011); *Comeaux v. Experian Info. Solutions*, 2004 U.S. Dist. LEXIS 10705, *20 (E.D. Tex. 2004); *Cartwright v. Experian*, et al., Case No. CV 09-427 (C.D. Cal. 2009); *Campbell v. Experian Info. Solutions, Inc.*, 2009 U.S. Dist. LEXIS 106045 (W.D. Mo. Nov. 13, 2009); *Jensen*

*v. Experian Info. Solutions, Inc.*, 2001 U.S. Dist. LEXIS 15134 (E.D. Tex. Mar. 30, 2001); *Williams v. Equifax Information Solutions, LLC*, No. 48-2003-CA-9035-O (Orange County 2007); *Apodaca v. Discover Financial Services*, 417 F. Supp. 2d 1220 (D.N.M. 2006)

73. Numerous cases alleging a mixed file and/or a failure to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports and consumer files it publishes and maintains have also been brought in this District and Division. *See e.g.*, *Mullins v. Equifax Information Services, LLC*, 3:05cv888, 2007 WL 2471080 (E.D. Va. August 27, 2007); *Saunders v. Branch Banking and Trust Co.*, 3:05cv731 (E.D. Va.); *Ross v. Experian Information Solutions, Inc.*, 3:09cv144 (E.D. Va. 2009); *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235 (4th Cir. 2009); *Sloane v. Equifax Info Servs.*, 510 F.3d 495 (4th Cir. 2007); *Chaudhary v. Experian Info. Solutions, Inc.*, Civil No. 3:13-cv-577 (E.D. Va. 2013).

74. Experian knowingly chooses to ignore these notices of its mixed file problems. It does so even though as it already possesses a simple, easy, and inexpensive means to correct and avoid the problem.

75. Despite these lawsuits and enforcement actions, Experian has not significantly modified its procedures to assure that the consumer reports that it prepares, publishes, and maintains are as accurate as possible, as required by the FCRA at 15 U.S.C. § 1681e(b).

76. Upon information and belief, Experian has not, and does not intend, to meaningfully modify its procedures to comply with this section of the FCRA because compliance would drastically increase its operating expenses.

77. Accordingly, Experian's violations of 15 U.S.C. § 1681e(b) were willful and causes it to be liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

78. Experian's failure to meaningfully modify its procedures caused substantial harm to Plaintiff.

79. Experian's actions were accomplished through its agents, servants, and/or employees who were acting within the scope of their agency or employment, and under Experian's direct supervision and control.

80. Experian's actions were in accordance with its intent, policies, and procedures.

81. Upon information and belief, Experian has agreements with each and every one of the creditors to whom it sold an outrageously erroneous copy of the Plaintiff's consumer report.

82. It is illegal for Experian to sell Plaintiff's consumer report to any of its subscribers unless it has a permissible purpose to do so under the limited circumstances described in 15 U.S.C. § 1681b.

83. The Plaintiff's consumer reports are evidence that Experian sold the Plaintiff's consumer report to at least 31 creditors without authorization, or any other permissible purpose provided in 15 U.S.C. § 1681b.

84. The selling of Plaintiff's wildly inaccurate consumer report by Experian to third parties invaded his privacy and defamed him, which are traceable to actions at common law.

85. The FCRA was specifically designed to address the very type of harm that the Plaintiff suffered in this case.

## CAUSES OF ACTION
### COUNT I: Violations of 15 U.S.C. § 1681e(b)

86. Based upon the facts described in detail in this Complaint, Experian has violated the Plaintiff's rights by failing to maintain reasonable procedures to assure the maximum possible accuracy of his consumer report. 15 U.S.C. § 1681e(b).

87. It is wholly unreasonable for Defendant to maintain procedures that allow multiple

social security numbers to be included in a single consumer file.

88. It is wholly unreasonable for Defendant to maintain procedures that allow two completely different names (and their relative variations) to be reported in a single consumer file.

89. Experian failed to maintain reasonable procedures designed to assure that Plaintiff's consumer file and consumer reports contained **only** information that belongs to him.

90. Experian's failure to maintain reasonable procedures to assure maximal accuracy of Plaintiff's consumer reports and consumer filed is a violation of 15 U.S.C. § 1681e(b).

91. As a direct result of Defendant's violations of 15 U.S.C. § 1681e(b), Plaintiff has suffered the injuries and resulting actual damages as detailed herein.

92. Defendant's violations of 15 U.S.C. § 1681e(b) were willful because Experian, despite being on notice, maintains a system that allows two completely different consumer files to be mixed. Therefore, Experian is liable to Plaintiff for his statutory, actual, and punitive damages to be determined at trial. 15 U.S.C. § 1681n. Further, Experian is liable for Plaintiff's reasonable attorney's fees and costs. *Id.*

93. Alternatively, Defendant's violations of 15 U.S.C. § 1681e(b) were negligent. Therefore, Experian is liable for Plaintiff's actual damages, statutory damages, and reasonable attorney's fees and costs. 15 U.S.C. § 1681o.

### COUNT II: Violations of 15 U.S.C. § 1681b

94. Based upon the facts described in detail in this Complaint, Experian has violated the Plaintiff's rights by selling and publishing his consumer report to numerous third parties without a permissible purpose to do so.15 U.S.C. § 1681b.

95. The FCRA explicitly limits 1) the purposes for which a consumer reporting agency may furnish a consumer report and 2) for which a person may request a consumer report.

96. The FCRA explicitly states that a consumer reporting agency, like Experian, may only furnish a consumer report for a permissible purpose.

97. The FCRA includes an exhaustive list of permissible purposes for furnishing a consumer report.

98. Specifically, 15 U.S.C. § 1681b(3) permits Defendant to furnish a consumer report "[t]o a person which it has reason to believe—

> A. intends to use the information in connection with a credit transaction **involving the consumer on whom the information is to be furnished** and involving the extension of credit to, or review or collection of an account of, the consumer; or …
>
> F. otherwise has a legitimate business need for the information— (i) in connection with a business transaction that is **initiated by the consumer**; or (ii) to review an account to determine whether the consumer continues to meet the terms of the account."

99. Upon information and belief, Experian violated 15 U.S.C. § 1681b each time it furnished Plaintiff's consumer credit information in connection with the aforementioned erroneous hard inquiries.

100. Upon information and belief, each of the erroneous hard inquiries were initiated by Plaintiff's brother or some other third party.

101. Upon information and belief, Experian provided Plaintiff's consumer credit information to a third party after it received his twin's social security number, name, and birthdate.

102. There are no circumstances under which Experian should have furnished Plaintiff's consumer credit information to someone requesting his brother's information.

103. There are no circumstances under which Experian should have furnished Plaintiff's consumer credit information to a third party that provided a so-called "Social Security Number Variation" that Experian erroneously included in Plaintiff's consumer file.

104. As a result of Defendant's violations of 15 U.S.C. § 1681b, Plaintiff suffered injuries that resulted in actual damages, all of which have been described in detail in this Complaint.

105. Defendant's violations of the FCRA were willful because it has long been on notice that its policies and procedures put consumers at a risk of having their personal consumer report information published to third parties without a permissible purpose.

106. Because Experian knew or should have known that it put the Plaintiff and other consumers at increased risk of harm, it is liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Additionally, Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendant in an amount to be determined by the Court. 15 U.S.C. § 1681n and § 1681o.

107. In the alternative, Defendant's violations of the 15 U.S.C. § 1681b were negligent, which renders Defendant liable for Plaintiff's statutory damages, actual damages, and reasonable costs and attorney's fees. 15 U.S.C. § 1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment against Defendant for the following:

   a. Declaratory judgment that Experian has violated the Plaintiff's rights under the FCRA;

   b. Statutory, actual, and punitive damages pursuant to 15 U.S.C. § 1681n;

b. Statutory and actual damages pursuant to 15 U.S.C. § 1681o;

c. Reasonable attorney's fees and costs pursuant to 15 U.S.C. §§ 1681n, 1681o;

d. Any pre-judgment and post-judgment interest as may be allowed under the law; and

e. Other and further relief this Court may seem just and proper.

                                **KENTRELL ELVERT DARDEN-ASKEW**

*/s/ Susan M. Rotkis*
Susan M. Rotkis, VSB 40693
Of Counsel
The Consumer Justice Law Firm
8245 N. 85th Way
Scottsdale, Arizona 85258
T: (480) 626-1333
E: srotkis@cjl.law
*Attorney for Plaintiff*